**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Edwards,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>    Defendant. | No. CV 10-01176-PHX-EHC<br><br>**ORDER** |

This is an action for judicial review of a denial of disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). The matter is fully briefed (Doc. 13 & 15).

Plaintiff applied for disability benefits in March 2006 at approximately 32 years of age alleging an initial onset date of April 30, 2002 (Doc. 12 - Administrative Record [Tr.] 110-122). Plaintiff amended his disability onset date to May 1, 2006 (Tr. 16, 262). Plaintiff is insured for benefits through September 30, 2007 (Tr. 18).

Plaintiff's claim was denied initially (Tr. 59-60) and upon reconsideration (Tr. 61-62). Plaintiff requested a hearing (Tr. 16). After a hearing on September 9, 2008 (Tr. 31-58), the Administrative Law Judge ("ALJ") issued a decision on December 18, 2008 finding that Plaintiff is not disabled (Tr. 13-26). The ALJ listed Plaintiff's combination of severe impairments as status post cervical fusion, diabetes mellitus (a chronic metabolic disorder),

gastroesophageal reflux disease, obesity and depression (Tr. 18). The Appeals Council denied Plaintiff's request for review (Tr. 1-4) which was a final decision.

**I.**

Standard of Review

A person is "disabled" for purposes of receiving social security benefits if he or she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). Social Security disability cases are evaluated using a five-step sequential evaluation process to determine whether the claimant is disabled. The claimant has the burden of demonstrating the first four steps. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

In the first step, the ALJ must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. The second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments which significantly limits the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made and the claim is denied. At the third step, the ALJ determines whether the impairment or combination of impairments meets or equals an impairment listed in the regulations; if so, disability is conclusively presumed and benefits are awarded. If the impairment or impairments do not meet or equal a listed impairment, the ALJ will make a finding regarding the claimant's "residual functional capacity" based on all the relevant medical and other evidence in the record. A claimant's residual functional capacity ("RFC") is what he or she can still do despite existing physical, mental, nonexertional and other limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work;" if so, the claimant is not disabled and the claim is

1  denied. The Commissioner bears the burden as to the fifth and final step of establishing that
2  the claimant can perform other substantial gainful work. Tackett, 180 F.3d at 1099.

3  The Court has the "power to enter, upon the pleadings and transcript of record, a
4  judgment affirming, modifying, or reversing the decision of the Commissioner of Social
5  Security, with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). The
6  decision to deny benefits should be upheld unless it is based on legal error or is not supported
7  by substantial evidence. Ryan v. Commissioner of Social Security, 528 F.3d 1194, 1198 (9th
8  Cir. 2008). Substantial evidence means "such relevant evidence as a reasonable mind might
9  accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91
10 S.Ct. 1420, 1427 (1971). The Court must consider the record in its entirety and weigh both
11 the evidence that supports and the evidence that detracts from the Commissioner's
12 conclusion. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.1985).

## II.

### Background Facts

*Plaintiff's Medical Records - August 2000 to March 2006*

In August 2000, Plaintiff experienced shoulder and forearm discomfort after lifting a heavy load at work (Tr. 342-343). An MRI of Plaintiff's cervical spine showed reversed cervical lordosis (curvature) secondary to muscle spasm, and a herniated disc at C4-C5 causing minimal spinal cord deformity (Tr. 340). Plaintiff had surgery in November 2000 (Tr. 339). M.A. Paracha, M.D., post-surgery, reported Plaintiff's "significant resolution of right arm discomfort" and no other focal neurological deficits but noted Plaintiff's complaints of headaches (Tr. 339). Dr. Paracha advised Plaintiff to follow-up with another doctor regarding a release to return to work (Tr. 339). In September 2001, Plaintiff complained to Dr. Paracha about worsening headaches for the past year (Tr. 337-338) but the headaches appeared to be resolved after Dr. Paracha prescribed blood pressure medication between November 2001 and January 2002 (Tr. 334-335). Plaintiff complained of headaches to other providers in January 2003 (Tr. 315) and in September 2003 (Tr. 266).

1  In November 2001, Plaintiff complained to Dr. Paracha of numbness which radiated
2  into his right leg (Tr. 335). February 25, 2002 nerve conduction studies revealed meralgia
3  paresthetica[1] (Tr. 344). Dr. Paracha assessed the condition as caused by weight gain (Tr. 332-
4  333). In March and April 2002, Dr. Paracha recommended that Plaintiff lose weight and a
5  nerve block if the pain was not resolved with medication (Tr. 330-331). The record does not
6  show any further treatment by Dr. Paracha after April 2002.

7  In November 2002, Plaintiff was treated at a hospital emergency room for complaints
8  of neck and right arm pain (Tr. 298-300). He again sought treatment for neck pain in April
9  2003 (Tr. 290-292). Plaintiff reported left hand pain and swelling in July 2003 (Tr. 275-277).

10  In November 2003, Plaintiff was treated by John Knudsen III, M.D., for complaints
11  of neck pain that radiated down both arms into his wrists and that worsened with use of his
12  arms. Dr. Knudsen reported that Plaintiff's history and symptoms were consistent with
13  cervical radiculopathy and administered a series of cervical epidural steroid injections (Tr.
14  281, 284-286, 289).

15  In June 2004, Plaintiff was involved in a motorcycle accident that resulted in
16  compressed fractures of the T9 and T6 vertebrae in his upper back. Michael Seiff, M.D., noted
17  Plaintiff's report of back pain and prescribed a back brace. Dr. Seiff reported that Plaintiff was
18  neurologically intact without sensory or motor deficits and no pathological long tract findings
19  (Tr. 327). In July 2004, Dr. Seiff noted that Plaintiff was "intermittently compliant" with the
20  brace and feeling overall relief (Tr. 328).

21  In March 2006, a medical provider noted that Plaintiff was taking a muscle relaxant
22  (Flexeril) for muscle spasms and that Plaintiff reported doing well on his medication (Tr.
23  435).

---

[1]Meralgia refers to pain in the thigh. Paresthetica refers to "burning pain, tingling, pruritus, or formication along the lateral aspect of the thigh in the distribution of the lateral femoral cutaneous nerve due to entrapment of that nerve." Stedman's Medical Dictionary, at 1093 (27th ed. 2000).

*Plaintiff's Medical Records - May 2006 through the end of 2006*

In May 2006, Plaintiff sought treatment for osteoarthritis and muscle spasms (Tr. 434). In June 2006, Plaintiff was treated for muscle spasms (Tr. 433).

In May 2006, Charles Lindsay, D.O., completed a form as Plaintiff's treating physician since November 2004. Dr. Lindsay opined that Plaintiff could lift less than 10 pounds, stand and/or walk less than 2 hours and sit less than 6 hours in an 8-hour day, and never climb, stoop, kneel or use fingers (Tr. 345-347).

During the latter part of 2006, Plaintiff was treated for neck and spine pain and muscle spasms (Tr. 427-431). In October 2006, nerve conduction studies of Plaintiff's upper extremities were within normal limits (Tr. 447).

*Function Reports - 2006*

In April 2006, Plaintiff completed a Function Report (Tr. 147-154) in which he stated that he helped his wife get their children ready for school, drove the children to and from school, and performed household chores such as washing dishes and taking out the trash. Plaintiff's activities also included taking care of the children and helping with their homework; feeding, playing with and bathing the dog; preparing simple meals; doing laundry; and shopping for food and clothing. Plaintiff reported he could lift 50 pounds and walk one block; could concentrate for 15 to 30 minutes; and could follow written instructions "pretty well."

In April 2006, Sundae Edwards, Plaintiff's wife, completed a Function Report (Tr. 138-145) in which she stated that Plaintiff picked up their son from pre-school, watched their sons while she was at work, and performed household chores such as cooking, laundry and dishes. Mrs. Edwards reported that Plaintiff rarely did yard work. She stated that Plaintiff could lift up to 50 pounds.

*Physical and Psychological Examination Reports - 2006*

In July 2006, Jason Taylor, D.O., examined Plaintiff regarding a disability evaluation (Tr. 351-357). Dr. Taylor noted Plaintiff's reports of neck pain, muscle spasms, chronic

migraine headaches, and chronic swelling in his hands. Plaintiff also reported discomfort with prolonged sitting and occasional numbness in his fingers. On examination, Plaintiff had limited range of motion in his cervical spine but normal range of motion in his back, shoulder, elbows, and wrists. Plaintiff walked with a normal gait and had full 5/5 grip strength and intact sensation in his hands and arms. Plaintiff appeared to sit comfortably and move on and off the examination table without difficulty (Tr. 354-357). Plaintiff reported living with his wife and three children (ages 5, 9 and 11), and that his daily activities included helping around the house, taking his children to school, driving to the store, and shopping (Tr. 354). Based on his examination, Dr. Taylor found that Plaintiff was limited to lifting 50 pounds occasionally and 25 pounds frequently, occasional climbing, and was not limited in sitting, standing or walking (Tr. 351-353, 357).

On August 23, 2006, Stephen Gill, Ph.D., performed a psychological evaluation of Plaintiff (Tr. 378-389). Plaintiff drove himself to the appointment. Plaintiff reported taking anti-depressant medication but had stopped because it interfered with his blood pressure readings. Plaintiff was not currently receiving mental health treatment. Plaintiff reported that his daily activities included dressing himself, getting his children ready for school, taking a nap, helping his children with their homework, and watching television. Plaintiff said he was capable of preparing simple meals, performing "minimal household chores" and paying the bills (Tr. 378-380). During the examination, Plaintiff appeared depressed and easily distracted but was able to respond to simple questions and instructions. There was no evidence of thought disturbance. Dr. Gill reported that Plaintiff was functioning in the low average range intellectually with reasonably intact mental status; appeared to have limited insight and judgment; could reason to avoid hazards and exercise judgment; and, could learn and implement a simple repetitive task in an independent work environment (Tr. 380-382). Dr. Gill opined that Plaintiff was moderately limited ("fair but not precluded") in activities involving sustained concentration and persistence, social interaction, and adaptation; and mildly limited in activities involving understanding, carrying out and remembering (Tr. 383-

389). Dr. Gill stated his diagnosis as depressive disorder, moderate to severe, with episodes of anxiety and panic, not otherwise specified, and that this condition would impose limitations for 12 months (Tr. 383).

*Non-Examining Reviewing Reports - 2006*

On August 14, 2006, Ernest Griffith, M.D., completed a Residual Functional Capacity Assessment of Plaintiff, noting Plaintiff's primary diagnosis of "cervical DDD post fusion w neck pain," a secondary diagnosis of hypertension and obesity, with other alleged impairments of back pain and dyspnea (shortness of breath) (Tr. 358-365). Dr. Griffith opined that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, could stand, walk and sit for 6 hours out of an 8-hour workday, and was unlimited in the ability to push and/or pull (Tr. 359). Dr. Griffith found that Plaintiff was limited in his ability to reach in all directions and was unlimited in the ability to handle, finger and feel (Tr. 361). Dr. Griffith reported that Plaintiff's claims of back impairment and dyspnea were not confirmed by examination (Tr. 363). Dr. Griffith's report was consistent with the ability to perform a range of medium work (Doc. 15 at 6-7).

On September 13, 2006, Alan Goldberg, Psy.D., completed a Mental Residual Functional Capacity Assessment of Plaintiff (Tr. 390-392). Dr. Goldberg opined that Plaintiff had some moderate limitations but that he could perform simple unskilled work (Tr. 392). Dr. Goldberg reported that Plaintiff could understand, carry out and remember simple instructions; make simple work-related decisions; and respond appropriately to supervision and work situations although he would do best with limited interaction with co-workers (Tr. 392).

*Plaintiff's Medical Records - 2007*

Plaintiff received physical therapy between February and March 2007 as referred by Charles Lindsay, M.D. (Tr. 532-543). Plaintiff reported in February 2007 that he could walk one mile but could not lift overhead or engage in repetitive bending or stooping (Tr. 542). In June 2007, Plaintiff was treated for non-cardiac chest pain and told a medical provider that

he was more actively trying to coach Little League baseball. He was encouraged to continue with lifestyle modification and to lose weight (Tr. 491).

*Non-Examining Reviewing Reports - 2007*

On March 21, 2007, Stephen Fair, Ph.D., completed a Case Analysis in which he affirmed Dr. Goldberg's September 13, 2006 opinion that Plaintiff had the ability to perform unskilled work (Tr. 487).

On April 3, 2007, Donna DeFelice, M.D., completed a Residual Functional Capacity Assessment regarding Plaintiff that contained an opinion similar to that of Dr. Griffith. Dr. DeFelice opined that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, could stand, walk and sit 6 hours out of an 8-hour workday, and was unlimited in the ability to push and/or pull (Tr. 480). Dr. DeFelice found that Plaintiff was limited in his ability to reach in all directions and was unlimited in the ability to handle, finger and feel (Tr. 482). Dr. DeFelice's report was consistent with the capacity to perform medium work (Doc. 15 at 6-7).

*Plaintiff's Medical Records - 2008*

In March 2008, Plaintiff complained to a provider of pain in his right leg, was assessed with bursitis of the hip, and received an injection (Tr. 498-500).

In February and April 2008, Plaintiff reported left shoulder pain (Tr. 497, 501-502) and received physical therapy for his shoulder between April and May 2008 (Tr. 547-556). Plaintiff told his therapist that he hurt his shoulder after he walked his dog and the leash pulled on his left shoulder (Tr. 555). In April 2008, Plaintiff was treated for lower back and shoulder pain and right leg weakness (Tr. 496). In May 2008, Plaintiff demonstrated limited strength in his legs but normal lordosis curve in his back (Tr. 495). Plaintiff's medical records showed a similar report and results in July 2008 (Tr. 493-494).

**III.**

The Hearing Before the ALJ - September 9, 2008

Plaintiff, represented by counsel, and Thomas Mitchell, a Vocational Expert (VE), testified at the hearing (Tr. 33).

1   Plaintiff testified that he lives with his wife and three children. Plaintiff is 5'7" tall and
2   weighs 211 pounds. He graduated from high school and has a valid driver's license (Tr. 37).
3   Plaintiff went back to work after his November 2000 surgery and was laid off from his job in
4   April 2002 (Tr. 42-43, 45). In 2003 Plaintiff received a certified accounting degree but was
5   unable to find a job in that field (Tr. 38, 43, 45-46). Plaintiff has previously worked as an
6   inventory clerk, laborer, machine operator, radiator shop mechanic, dispatcher and cashier,
7   and in airplane brake maintenance (Tr. 39-42).

8   Plaintiff testified that he has experienced headaches and depression since his
9   November 2000 surgery (Tr. 42-43). Plaintiff said his most serious problem is migraine
10  headaches, which he has daily for at least 2 hours per day (Tr. 43-44). Plaintiff testified that
11  his average headache pain is about 7 on a scale of one to 10 (Tr. 52). Plaintiff said he has
12  daily pain running down from his lower back into his right leg (Tr. 45). His daily pain
13  excluding headaches is about 6 (Tr. 52). Plaintiff estimated that he can sit or stand for 30
14  minutes at a time, walk for about 20 minutes, and lift 10 pounds (Tr. 46-47). Plaintiff said he
15  lies down for 3 hours per day (Tr. 47-48).

16  Plaintiff said he is not receiving treatment for depression (Tr. 49). Plaintiff testified that
17  his symptoms include a tendency to isolate himself, irritability, difficulty concentrating and
18  remembering, and lack of interest in normal activities (Tr. 49-50). Plaintiff said his doctor did
19  not believe his depression was severe enough to warrant treatment (Tr. 49).

20  Plaintiff started seeing Dr. Lindsay in 2006 (Tr. 53). Plaintiff testified that he cannot
21  sustain work because of headaches, diarrhea and back and leg pain (Tr. 53).

22  When questioned by the ALJ regarding a person who could perform light unskilled
23  work, with no crawling, crouching, climbing, squatting, or kneeling; no use of legs or feet for
24  pushing or pulling foot or leg controls; and no use of the arms for above-shoulder-level work,
25  the VE testified that such a person could perform cashiering jobs, assembly jobs, and security
26  jobs, all of which exist in Arizona and in the national economy (Tr. 54-55).

27
28

When questioned by Plaintiff's attorney, the VE testified that the limitations reported by Dr. Lindsay indicated less than sedentary work (Tr. 57).

## IV.

### The ALJ's Findings

In a written decision dated December 18, 2008 (Tr. 16-26), the ALJ found that Plaintiff had not engaged in substantial gainful activity since his amended onset date of May 1, 2006 (Tr. 18). The ALJ found that Plaintiff impairments of status post cervical fusion, diabetes mellitus, gastroesophageal reflux disease, obesity and depression were severe when considered in combination but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing in the regulations (Tr. 18-19). The ALJ found that, based on the entire record, Plaintiff has the residual functional capacity to perform light work except that Plaintiff is unable to crawl, crouch, climb, squat, and kneel; he is unable to use his lower extremities for pushing and pulling and is unable to use his upper extremities for work above shoulder level; and that Plaintiff is limited to unskilled work (Tr. 20).

In reaching this conclusion, the ALJ discussed at length Plaintiff's hearing testimony, including Plaintiff's symptoms and limitations concerning headache pain and his back and leg pain; and his testimony that he has depression for which he has received no treatment. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible (Tr. 20-21). The ALJ discussed that Plaintiff's medical records do not show that Plaintiff reported headaches to medical professionals after the amended onset date of May 1, 2006 (Tr. 21). After noting that Plaintiff underwent cervical fusion, the ALJ discussed that medical records show that the surgery was successful, his muscle spasms have been successfully treated with medication, Plaintiff has received physical therapy, and Plaintiff has not been under treatment for chronic pain syndrome (Tr. 21). In addition, objective findings in Plaintiff's medical records were inconsistent with a finding of disability (Tr. 21-22).

The ALJ found that there was no evidence that Plaintiff's weight interfered with treatment related to his impairments (Tr. 22). The ALJ also found that there was no evidence that Plaintiff has experienced symptoms associated with diabetes, hypertension, sleep apnea or gastroesophageal reflux disease that would indicate that Plaintiff is more limited than as found (Tr. 22).

With respect to Plaintiff's depression, the ALJ noted there was no evidence of mental health treatment in the record (Tr. 22). The ALJ did not assign controlling weight to Dr. Gill's assessment (Tr. 23). The ALJ discussed Plaintiff's daily living activities and that he had not had any episodes of decompensation (Tr. 23-24). The ALJ did not assign controlling weight to the opinion of Dr. Lindsay, a treating physician (Tr. 24).

The ALJ found that Plaintiff did not have the ability to perform his past relevant work as backup operator, inventory clerk, machine operator, radio dispatcher/cashier (all semi-skilled medium); light duty mechanic (skilled medium); laborer (unskilled heavy); or utility (semi-skilled heavy), as Plaintiff is limited to light work with additional limitations (Tr. 24). The ALJ found that Plaintiff is not under a disability (Tr. 25).

## V.

### Discussion

Plaintiff argues that the ALJ improperly weighed medical source evidence and erred by misinterpreting the evidence to Plaintiff's detriment. Plaintiff seeks remand for an award of benefits. Defendant argues that substantial evidence supports the ALJ's decision that Plaintiff is not disabled but if error is found, the matter should be remanded for further administrative proceedings.

Generally, a treating physician's opinion is afforded more weight than the opinion of an examining physician, and an examining physician's opinion is afforded more weight than a non-examining reviewing or consulting physician's opinion. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). Where a treating doctor's opinion is uncontradicted, an ALJ may reject it only for "clear and convincing" reasons; however, a contradicted opinion of a

treating or examining physician may be rejected for "specific and legitimate" reasons. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or a treating physician;" such an opinion may serve as substantial evidence only when it is consistent and supported by other independent evidence in the record. Id.

In this case, it was reasonable for the ALJ to not assign controlling weight to the opinion of Dr. Paracha. Dr. Paracha treated Plaintiff for headaches intermittently between November 2000 and January 2002, prescribing blood pressure medication which appeared to alleviate Plaintiff's headaches (Tr. 337-339, 334-335). Dr. Paracha last treated Plaintiff in April 2002 (for a condition unrelated to headaches) (Tr. 330), more than four years before Plaintiff's amended onset date of May 1, 2006. There do not appear to be treatment records regarding Plaintiff's reports of headaches after the May 1, 2006 amended onset date other than Dr. Taylor's July 12, 2006 consultative examining report noting Plaintiff's chronic headaches (Tr. 354-357). The objective evidence appears to support the ALJ's finding that Plaintiff's records do not show that Plaintiff reported headaches to treating medical professionals after the amended onset date (Tr. 21). See Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1165 (9th Cir. 2008)(medical opinion that predated alleged onset date is of limited relevance).

It further was reasonable for the ALJ to not assign controlling weight to the May 2006 opinion of Dr. Lindsay reporting Plaintiff's extreme functioning limitations. The ALJ supported his decision to not assign controlling weight to the opinion of Dr. Lindsay, a treating physician, by stating that the course of treatment was not consistent with the alleged limitations and Dr. Lindsay's opinion was inconsistent with other opinion evidence of record and with Plaintiff's activity level (Tr. 24). Medical records concerning Plaintiff's November 2000 surgery showed significant resolution of right arm discomfort and no other focal neurological deficits (Tr. 339). Plaintiff's muscle spasms in 2006 were treated with

medication with good results (Tr. 428, 431, 433-435). Nerve conduction studies of Plaintiff's upper extremities in October 2006 were within normal limits (Tr. 447). Plaintiff's daily activities included taking his children to and from school, caring for his children while his wife was at work, trying to coach baseball, and household chores. The ALJ in his findings discussed these and other factors, such as Plaintiff's physical therapy and his lack of treatment for chronic pain syndrome (Tr. 21, 23, 24). Daily activities such as caring for young children and maintaining a household may undermine claims of disabling impairments. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).

In addition, Dr. Taylor's July 2006 consultative examination of Plaintiff revealed that Plaintiff had limited range of motion in his cervical spine but normal range of motion in his back, shoulder, elbows, and wrists; Plaintiff walked with a normal gait and had full 5/5 grip strength and intact sensation in his hands and arms (Tr. 351-357). Dr. Taylor found that Plaintiff was limited to lifting 50 pounds occasionally and was not limited in sitting, standing or walking (Tr. 351-353, 357).

While Dr. Lindsay, a treating physician, provided a diagnosis related to Plaintiff's cervical condition, he did not set forth any medical findings as the basis for his limitations assessment (Tr. 345-347). The ALJ need not accept the opinion of any physician if that opinion is not supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957(9th Cir. 2002).

Plaintiff argues that the ALJ erred in not assigning significant weight to the opinion of Dr. Gill, an examining psychologist. The ALJ included a lengthy discussion in his findings regarding his reasons for not assigning controlling weight to the opinion of Dr. Gill (Tr. 22-23). The ALJ found that Dr. Gill did not have the benefit of Plaintiff's entire records, Dr. Gill's opinion was inconsistent with the overall objective evidence, and Dr. Gill relied heavily on Plaintiff's subjective reports of symptoms and limitations (Tr. 23). The ALJ discussed that Plaintiff had not reported undergoing any current mental health treatment and had not experienced any episodes of decompensation (Tr. 22-23). Plaintiff testified that his doctor

had not found his depression symptoms significant so as to warrant treatment (Tr. 49). The ALJ discussed that Plaintiff had reported coaching Little League baseball, thereby raising the question of whether he had exaggerated his symptoms (Tr. 23). The ALJ provided sufficient reasons for his assessment of Dr. Gill's opinion.

Finally, Plaintiff argues that the ALJ erred in relying on the opinions of Drs. DeFelice and Goldberg, both reviewing physicians who did not examine Plaintiff. It does not appear that the ALJ mentioned these opinions in his decision. On September 13, 2006, Dr. Goldberg, a psychiatrist, reviewed Plaintiff's medical records and opined that Plaintiff had some moderate limitations but could perform simple unskilled work (Tr. 392). Dr. Goldberg reported that Plaintiff could understand, carry out and remember simple instructions; make simple work-related decisions; and could respond appropriately to supervision and work situations although he would do best with limited interaction with co-workers (Tr. 392). On April 3, 2007, Dr. DeFelice opined that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, could stand, walk and sit 6 hours out of an 8-hour workday, and was limited in his ability to reach in all directions (Tr. 480, 482). Dr. DeFelice's report was consistent with the capacity to perform medium work (Doc. 15 at 6-7). These opinions were consistent with the overall medical evidence, including Plaintiff's successful result from his cervical fusion surgery, positive treatment of muscle spasms, no ongoing chronic pain syndrome treatment, no ongoing mental health treatment and his description of his daily activities.

The ALJ did not improperly weigh the medical source evidence or misinterpret the medical evidence related to Plaintiff's impairments. The Commissioner's final decision is based on substantial evidence.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner denying Plaintiff's claim for benefits is affirmed.

//

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter Judgment accordingly.

DATED this 23rd day of September, 2011.

_____
Earl H. Carroll
United States District Judge